All right. Counsel, you may proceed. Thank you, Your Honor, and may it please the Court. Adi Dinar for the petitioning company American Tripoli. There are three sets of issues in this case, and time permitting, I would like to touch upon all three of them. The first issue is exhaustion. The second set of issues are the constitutional claims, namely removal restrictions for ALJs and commissioners, Article III and Seventh Amendment. And the third issue is the set-aside or vacate or remedy. I suspect that the Court would be interested in discussing exhaustion since that's a jurisdictional issue, so I'll start there. Section 816 of the MINE Act recognizes judicial discretion to excuse exhaustion. Exhaustion is not required where structural constitutional claims presented for the first time to the federal courts cannot be resolved or avoided by the agency by changing its policies or procedures. That's the rule that the Sixth Circuit announced in the Jones Brothers case, which interpreted this specific exhaustion provision of the MINE Act, and the government has not given this Court any reason or explanation to create a circuit split by departing from the Sixth Circuit's decision relating to the MINE Act. Instead, the government offers two theories, neither of which works here. The first theory is based on the Ross v. Blake case, which is a Prison Litigation Reform Act case. The statute there, though, does not recognize any judicial discretion to excuse exhaustion. The statute there is 42 U.S.C. 1997e. That is not the situation here. The extraordinary circumstances provision of the MINE Act does recognize judicial discretion. So we believe Ross v. Blake would be inapplicable to the situation here. Recognizing that problem with their theory of the case, the second set of arguments the government offers is this Circuit's RELCO decision. It's the case against the National Labor Relations Board. That case recognized two circumstances that qualify as extraordinary circumstances, but that case did not limit the universe of extraordinary circumstances to only those two situations. And the fact is that the National Labor Relations Board could have avoided the recess appointments issue in that case by simply not deciding any appeals that were pending in front of the board during the time that the board lacked quorum of properly appointed board members. Why shouldn't the NLRB case govern here, and what's extraordinary about this situation in your view? Thank you, Your Honor. So the extraordinary situation here is the nature of the claims that we're presenting, Article 3, Seventh Amendment removal, are the type of claims that the agency can do nothing about. So, for example, the commission doesn't have the power to direct the secretary to file these retaliatory discharge claims in federal court because that would be the commission directing the Secretary of Labor to step beyond its statutory bounds. But my understanding is the NLRB RELCO case was the exact same thing. The issue was constitutional claims, and we mentioned that there was still an exhaustion requirement. It still would require extraordinary circumstances. And so I guess that just runs right into RELCO, but maybe I'm misreading RELCO. Is there something in there that helps you? The nuance there is those constitutional claims could have been avoided by the agency. So the National Labor Relations Board could have not decided this petition, and then that would have completely avoided the recess appointments issue. But here, that's not the situation because there's nothing that the commission can do to cure the Article 3 problem, the Seventh Amendment problem, and the removal problem. Should the extraordinary circumstances really be read as not specific as to the claims, but specific, and this is how we read equitable tolling, specific as to things that were an extraordinary circumstance. Like, for instance, if the ALJ says, no, I'm not going to listen to that, and so therefore, you didn't get a chance to do it. Or something arose later, right? It rose after the ALJ, and so you obviously couldn't exhaust something that hadn't happened yet. That seems more along the lines of what exhaustion requires than, oh, yeah, I'm not going to do it because it can or can't be avoided. So we do believe that those could be extraordinary circumstances because the universe of extraordinary circumstances is not defined in the statute. Different courts have looked at different circumstances, the particularities of particular cases, and kind of come to the conclusion that there are some extraordinary circumstances. But I think the rule that is directly applicable here, I take your point that there could be new developments of fact or law that would constitute extraordinary circumstances. And I want to make sure I touch upon that point as it relates to this case. But I think when it comes to the Mine Act extraordinary circumstances provision, we have a Sixth Circuit case that directly speaks to the issue, and that does say that where the agency cannot avoid the constitutional claims, then the courts should not require exhaustion in that situation. So our first line of argument would be Jones Brothers. But to the new development point, I'll point out that the commission issued its final orders here in January of last year. And in February, the solicitor general, the acting solicitor general of the United States, for the first time took the position that the Department of Justice is not going to defend the constitutionality of removal restrictions for ALJs and commissioners. So to the extent that the court is looking at new development of law, we believe that those February letters that are in our papers do constitute a new development, and that would excuse exhaustion under Relco's rule, for example. On a slightly different point, I'm just going to ask because it's related to this exhaustion in some ways, which is the petition for review. So you noted or specifically pointed and attached two orders, the mine commission orders, which only decided that there were some cases that were hard to find or couldn't be found based on the citations, but not the underlying ALJ order. And we have a new rule that applies only to notices of appeal, which brings up the previous orders as well. But there's some commentary that says that that actually does not apply to petitions for review and agency action. And so I'm wondering, and I'm going to ask this government the same thing, what is actually before us? Is it just the ruling that you came up with cases it couldn't find and therefore was dismissing, or what's before us? Right, thank you. So our position is this is an ordinary petition for review. Granted, it was filed by the company Proce, and that's highly unusual. Companies do not appear Proce in front of courts. The company did not have legal representation at the time that the company filed the petition for review. An attorney could have done things differently, but that's the petition that we have in front of you. And by operation of law, only commission orders can be appealed from, and that's in the Mine Act itself. So we believe the company properly identified the commission orders that constituted the final orders of the commission. So initially the commission had granted sua sponte a discretionary review of the ALJ's decision. And in a separate order, the commission had granted the Proce company's petition for discretionary review. And at that point, we believe the company, again, appearing Proce, made some filings that contained some AI hallucinations is our assumption. And the commission then vacated those previous two orders, granting discretionary review and granting sua sponte a discretionary review. The company then filed a motion for reconsideration, and the commission denied that motion. So those are the two orders, the vacator order of the commission and the denial of reconsideration order of the commission that the company mentioned in the petition for review. And by operation of the Mine Act, you can't mention ALJ orders. In the petition for review, you have to mention commission orders. So our position is that given the nature of the constitutional claims here, the entirety of the administrative proceeding is at issue. The underlying problem with all of this is executive adjudication of private rights that violates Article III and the Seventh Amendment. So this is not a simple matter of sort of retrying in front of a proper executive officer. That's not the situation here. There is nothing that the commission itself can do to cure or avoid any of these constitutional problems. So to your question about the contents of the petition for review, I can imagine a situation where, say, a petitioner doesn't mention the case number of the administrative matter, and then that leaves the agency scrambling as to, OK, well, what exactly are you appealing from? That is not the situation here. The administrative case number was correctly mentioned in the petition for review, and the commission had no trouble submitting the administrative record. So that's sort of like a—to the extent that there is some procedural infirmity, we don't see that as a problem here. Well, so the downside of this is you could tell another story, which the D.C. Circuit has been strict. I don't know if they've just been strict in the mind or whether they've been—but strict on agency PFRs, and they're sort of on the lead on a lot of these agency cases. And so the other story would be you specifically designated two orders, and those two orders were the ones that basically granted the review and then consolidated them and then dismissed the review. And so the argument would be you must have been appealing those because you didn't identify the order with all the substantive issues. And so, you know, I'll give you a chance to respond, but there is another story. That wouldn't work if it was a notice of appeal, but apparently it does for a petition for review. Well, to the extent there is another story, it's not the story in this case, we believe. And the reason is, I mean, the ALJ did rule on the retaliatory discharge claims, but our position is those retaliatory discharge claims were improperly presented to the ALJ to begin with. So, you know, the answering the constitutional issue simply, we believe, leads to vacator of, you know, all of the operative orders in this case. And that also goes to concurrence. Just stress your one-sentence concurrence in the body case. You have to connect the dots between the constitutional violation and the harm. And the harm is being subject to this administrative proceeding. And that's the constitutional violation here. So we believe we have connected those dots and the petition for review takes care of that by properly, according to the statute, mentioning the commission's orders as opposed to the ALJ's orders. So the harm is not the outcome? That's part of the harm, Your Honor. And just to elaborate there, I would say, what about the argument that any of the constitutional issues that are raised here, you get the same outcome? Authority decided it doesn't exist. So what difference does it make? You get the same outcome. Thank you. So two points. One is part of the harm is the company is currently on the hook to pay the civil penalties and the compensatory damages. So if the operative orders are vacated, then the company will not be on the hook to pay those compensatory damages and civil penalties. And to the second part of your question, Your Honor, I mean, there are concrete pocketbook injuries, but there's also this harm of a constitutional nature that the Supreme Court has recognized in case after case, Celalaw, Lucia, Axon, Arthrex, Jocasey. And those harms are important because, according to the Supreme Court, separation of powers violations have to be policed by the courts. The executive branch can't do anything about that. Maybe Congress can do something about that. For example, Congress could have enacted a provision or amended the Mine Act to give the Secretary the option, the same option that, for example, the Securities and Exchange Commission and the Federal Trade Commission have of filing cases in federal district courts. The Secretary doesn't have that option because Congress hasn't enacted that option for the Secretary. So in terms of connecting harms to constitutional violations, we believe there is a direct connection here. There is simply nothing that the Commission can do to cure any of the constitutional defects that Congress has written into the Mine Act statutory scheme. Is it your position that what happened before the Commission, where the petitioner, Moseneke, cites orders and it was unable to, or cites authority, it was unable to provide copies, that's just irrelevant for our purposes? Is that your position? Thank you, sir. It just doesn't come into play here. Yes, and I want to make sure I reserve some time for rebuttal, but yes, the fact that the Proce Company was not able to submit copies of these cases that were apparently cited in some of the submissions is simply not relevant. Those are sort of minutiae in a particular case that doesn't really affect the nature of the constitutional harms and the constitutional violations that we have presented. I'll come back for rebuttal if there are no questions. Thank you. May it please the Court, Daniel Aguilar for the Secretary and the Commission. I'm happy to address the constitutional issues on the removal claim. We think this Court's decision and body is instructive. You have to show the causal link between the challenge removal restriction and the action you're complaining of. Essentially, what did the officer do that the President didn't want them to do and was frustrated about controlling the executive branch because of the removal restriction? That's not satisfied here, which is why they can't show compensable harm. On their Article 3 and 7th Amendment challenges, for the reasons we explained in our brief, we think that those are public rights that weren't something that was recognized as common law. Following along with the discussion that's been going on so far, there are two threshold reasons why the Court need not reach either one of those issues, both the exhaustion requirement in Section 816A and the failure to specify the actual order imposing the substantive liability that petitioner is complaining of in the petition for review. This Court's decision in RELCO Locomotives considered whether or not the NLRB members were constitutionally appointed. There wasn't anything that the NLRB could do about that. If they're not constitutionally appointed, they lack a quorum and the agency can't act at all. I take petitioner's point today to be, well, maybe they could simply refuse to decide cases. Well, I suppose the Commission could simply refuse to decide cases based on these claims, too. But that's sort of an abdication of duty. Usually, executive branch agencies have an obligation to both follow the law and at least entertain claims when people are bringing them up saying, hey, there's a reason why you're proceeding against me as fundamentally flawed. Maybe the agency can't declare a statute unconstitutional, but raising that constitutional challenge in the first instance at least apprises the agency of it. And if there's a swarm of these coming, and if there is anything that we could possibly do, and at a minimum, it helps to inform the litigation risk that's in the case. That's why the Supreme Court 70 years ago was saying, when you have a claim that is the officer should not be able to adjudicate the claim against me. That was the exact issue at L.A. Tucker Truck Lines. That is the claim that, by statute, you must raise in the agency proceeding. And if you fail to raise it, even if it's meritorious, like the claim in Relco Locomotives was, it was endorsed by the Supreme Court in Noel Canning. If you fail to raise it, and there's not a basis in the statute to excuse that failure, it's not properly before the Court. And so in Relco Locomotives, this Court said there are two ways in which we identify extraordinary circumstances, and they're the only two ways we've identified it. One is if the agency action is nakedly void under the statute. It looks to the statutory authority, because that's what the agency knows it can and cannot do. Not to constitutional authority, which is why Relco Locomotives comes out the way it did, because the argument was, it's constitutionally void. And this Court said that's not good enough under our extraordinary circumstances precedent. The other is if there's an intervening change of law, which meant you couldn't have brought your claim before, but now you can. And so that might help if there was a sea change in the law. They point to initially JARCASI as being that, but JARCASI itself said, everything that we decided in our 1989 decision in Grand Financiera cites the case before us. It was simply applying prior precedent and saying this scheme doesn't work. The other thing that they just pointed to was the Acting Solicitor General's notification that the United States isn't defending the constitutionality of the multiple layers of removal restrictions for administrative law judges. But people have been bringing removal challenges to those statutory restrictions since 2015. And these have been brought up in a number of different agency adjudications and in a number of different court cases, and were raised to the Supreme Court in JARCASI itself and previously in its decision in Lucia, although both times the Supreme Court declined to rule on that. This wasn't something that was unknown to litigants. They could and could have brought these, and they were bringing them, both the removal challenges and the Article 3 Seventh Amendment challenges in other cases contemporaneously with this one. Petitioner's failure to raise those issues in the administrative proceeding means that they are not properly before this court. And that's reinforced by the conclusion that in the petition for review, petitioner cited the orders denying review and vacating the commission's previous order saying it would review the case, and then the follow-on order denying reconsideration. Both of those were based on petitioner citation to cases that did not exist. And essentially, the denial being a sanction against that practice. So one of the things that I'm a little, I'm trying to figure out what, if any, of those constitutional questions we can address. And I wonder whether we can address the constitutional composition of the commission at least, and whether or not those particular officers are constitutional as to the petition for review. In other words, they have brought up the order from the commission. And so maybe we can at least address that question. And I think your response may well be, well, that's not exhausted anyways, because it was never brought. But I just want to, it just seems to me that that's the place to bring it up. You don't bring it up with the ALJ because you haven't gone to the commission yet. You bring it up with the commission. I think you could bring it up with both, but let's just assume like, okay, you've identified the commission orders, let's review those. Then I think they have to show, okay, what is your compensable harm with respect to the commission's removal restrictions when the commission's denying this? I don't think there's a plausible claim, and they haven't produced any evidence or even allegation about this, that the president did not want the commissioners dismissing this case based on the particular conduct there. That's what this court in body was considering is like, that's how you show compensable harm. Because obviously the commissioners are constitutionally appointed. They've been nominated by the president. They've received Senate confirmation. What the Supreme Court was talking about in Collins versus Yellen in separating out an appointments clause claim from a removal claim, is the appointment goes to your authority to act. Do you lawfully possess the office? Can you exercise these duties? Here there's no question, they're all lawfully appointed. So the question is on removal. Is the president obstructed from overseeing your exercise of executive power? And that's why you have to tie, as this court put it, the causal nexus between the challenged action to the president's control. And here I think there's no allegation or evidence that the president was dissatisfied. Then if you look to the Article 3 or 7th Amendment challenges, I think you would still have to show why that decision to deny discretionary review implicates a private right. I get if you're challenging the order imposing substantive liability, okay, that's at least like, that's your theory of it. Now we can meet out, we can discuss the merits of it. But I don't get how an agency commission empowered by Congress to review certain agency orders itself implicates private rights, abstracted from the actual imposition of liability. Would there also be an exhaustion issue on that? Because when they were before the commission, they didn't actually raise it before the commission. So I just want to see, it seems like there's two arguments sitting out there for the government. Yes, so our position is yes, it's exhausted. So both under 816A1, I believe it is, or just A, it says no objection that was not urged before the commission shall be considered by the court absent extraordinary circumstances for the reasons we explained. They didn't present this to the commission. We cited those filings in our supplemental appendix. It wasn't made there. And then additionally, it's 823D1, I believe, that says you also have to raise these things before the ALJ. That just reinforces the conclusion that this wasn't raised before the ALJ. It wasn't raised before the commission. And under long-standing precedent, when an objection is not urged before the agency under its times and rules of practice, it's not properly before the court. They rely on Carr v. Saul for a contrary outcome. And Carr v. Saul reaches the contrary outcome because there was no statute or regulation imposing this exhaustion before the agency. The Supreme Court makes that very clear at the beginning of its analysis. So it's usually exhaustion rules are imposed by Congress or they're imposed by the agency. And we respect those because, as under Ross v. Blake, that's a separation of powers concern. We can't enlarge or constrain what the other branches of government has set forth as their exhaustion rules when they're properly done. So there's no room for judicial discretion except where the statute permits it. And so under, yes, Your Honor, sorry. Carr also spoke to the non-adversarial nature of a social security. And does that sort of dovetail back to one of your points about why exhaustion is useful even if the ALJ or the commission can't grant the relief? Yes, it is, Your Honor. Because in the SSA context, the ALJ and the appeals counsel are basically trying to act as inquisitors, saying, what's fair? What's the best outcome? We're not arguing against you. We're trying to determine whether you actually are entitled to disability benefits. And so you aren't expecting the claimant to raise every possible claim or theory or make this adversarial when that's not the system that Congress has created. Here it is adversarial. There's a complaint issued. There's defense. There are alternative arguments presented to multiple adjudicators who then decide who has the better of the arguments. And so even if it's something that the agency can't consider, like in railco locomotives, are you constitutionally appointed, right? They can't confirm themselves like the Senate can. They can't nominate themselves like the president can. But at least there is, you know, LA Tucker truck line kind of gives the motivating reasoning for us. It's not just a separation of powers concern that we have to respect what Congress has done. And it's not just you have to, you know, cross every T and dot every I. It's that when you are making a series of challenges to the agency on particularly important issues, right, this says the agency can't act at all in enforcing the Mine Act in these ways. And basically the only ways that there is to enforce it, right? Miners are the people who know where the safety violations are. And they make those reports to the secretary and assist in these inspections. And if somebody's frustrating that, there has to be the ability to enforce. And that's the public rights system that Congress has imposed. If somebody's saying, that's still unconstitutional based on my theory, maybe the agency can't do anything about it. But it certainly can take a very close look at what's happening in this case. Because we need to make sure that if we're imposing liability here, if there's, you know, doubt around the margins, we need to take a very close look. And also the secretary with the commission's approval has the authority to settle cases that's clear by statute, right? And so if the secretary themselves thinks, this isn't a particularly good one for imposing a big monetary penalty, is there a way that we can come to an alternative agreement here and settle out this case because of the litigation risk? That's just underscoring why Congress thought, initially, it was a good idea to impose this across the board exhaustion requirement. It seems I understand your point about the litigative choices that are made. I'm not sure, though, that the agency, that with the agency, you're saying they do a better job and more careful review if there were more challenges to their structure, their constitutionality. I'm not sure I followed that one. No, I think it's saying that, like, it's putting a flag on the case. Obviously, we think the commission and the ALJs do their almost best and all. But particularly if you have a high volume or pro se pleadings, like are in this case saying, OK, what are the actual issues? How do we think about retaliation? What are the facts here? Oh, you didn't cite a whole lot. Well, maybe I should at least putting the flag up and saying, like, no, there are some pretty significant background challenges here. OK, let's really focus and just double down our efforts and make sure that we get this one right. And if there are alternative mechanisms like the secretary has in making those enforcement decisions, they can. I'm happy to rest on our brief on the constitutional issues, because I think those two threshold issues about failing to specify the individual order, imposing liability, and the failure to exhaust are sufficient to preclude this court's consideration of the constitutional issues. But I'm happy to address any questions the court has. Thank you, Your Honor. We ask you to deny the petition for review. A few quick points. The government is not asking you to enforce any of the orders of the commission. They are only asking you to deny the petition for review. The new development of law on the removal question, as I have presented before, there was a new development of law at the acting solicitor general's opinions. But as to the Article 3 and 7th Amendment claims, if you look at administrative record page number 3414, the Pro Se company did mention SEC versus JARCAS specifically. And in a typical blue collar fashion, the company was saying things like, well, what authority do you have to decide against me? What authority do you have? And those are the kinds of statements that we believe preserve the constitutional issues, all of the constitutional issues here. Quickly on the, if I see my time is up, can I quickly finish? You can finish your thought. Thank you. On the private rights, retaliatory discharge is a common law claim. And the civil penalties and compensatory damages are actions in debt at common law. So it satisfies the private rights component of JARCAS. Thank you. Thank you, counsel. We appreciate your arguments today. The case is submitted. Court will render a decision as soon as possible. And counsel, you may stand aside.